UNITED STATES DISTRICT COURT
for the
Western District of Louisiana
Lafayette-Opelousas Division

| | | |
|---|---|---|
| Sheena Robertson | ) | Case No. 6:17-cv-1663 |
| | ) | |
| versus | ) | |
| | ) | |
| Iberia Comprehensive Community Health | ) | |
| Care, Inc. d/b/a/ St. Martin Parish | ) | |
| Community Health Center | ) | |

## COMPLAINT

Now into the Honorable Court through undersigned counsel comes, Sheena Robertson (Complainant), a major, domiciliary of Iberia Parish, Louisiana, who seeks damages, through the Federal Tort Claims Act, caused by the medical malpractice of a federally supported health facility of the Health Resources and Services Administration and asserts:

**Parties**

1. Complainant is a major domiciled in Iberia Parish, Louisiana at 5809 Cromwell Drive, New Iberia.

2. Defendant, Iberia Comprehensive Community Health Care, Inc. d/b/a/ St. Martin Parish Community Health Center is domiciled in Iberia Parish, Louisiana at 806 Jefferson Terrace, New Iberia (hereinafter Iberia Comprehensive).

3. Not sued or made defendants herein but involved as defendant parties in an administrative action with the Louisiana Commissioner of Administration/Medical Review Panel predicate to a state court action, MRP No: 2015-010187, are:

    a. Dauterive Hospital, 600 N Lewis Street, New Iberia, LA 70563

    b. Danielle McLurkin, M.D., 317Dernier St, Saint Martinville, LA 70582

    c.   William Macklin, M.D., 200 Corporate Blvd., Lafayette, LA 70508

    d.   Michael Cotugno, M.D., 600 N. Lewis Street, New Iberia, LA 70563

    e.   Leland C. Lenahan, III, M.D., 1020 W Fertitta Blvd., Leesville, LA 71446

    f.   William A. Brennan, M.D., 105 Patriot Avenue, Suite101, Lafayette, LA70508

    g.   Dr. William T. Elliot, 1105 Robert E. Lee Blvd., New Orleans LA 70124-4306

    h.   Our Lady of Lourdes Regional Medical Center, 4801Ambassador Caffery Pkwy, Lafayette, LA 70508.

**Jurisdiction – Federal Tort Claims Act**

4. Defendant is a federally supported health facility under the Health Resources and Services Administration (HRSA).

5. As a federally-supported health center through the Federally Supported Health Centers Assistance Act (FSHCAA) of 1992 (P.L. 102-501) and FHSCAA of 1995 (P.L. 104-73), codified as 42 U.S.C. Section 233 (a) – (n), defendant has been granted medical malpractice liability protection through the Federal Tort Claims Act (FTCA).

6. Compliant with 28 U.S. Code § 2675, Claimant submitted a Form 95 to Department of Health & Human Services, Office of the General Counsel, General Law Division, Claims & Employment Law Branch, 330 C Street, S.W., Switzer Building, Suite 2600, Washington, DC (the Agency) 20201on or about December 30, 2015, and received by the Claims Office on January 6, 2016, asserting damages of $2,750,441.77.

7. On or about July 19, 2017, Complainant amended her Form 95 to assert damages totaling $9,750,441.77.

8. Six months have passed since the delivery of the Form 95 and the Agency has made no final disposition of the claim which is thus deemed a final denial of the claim for purposes of the Federal Tort Claims Act.

9.  Thus, this Honorable Court has subject matter jurisdiction.

**Venue - 28 U.S.C. §1346(b)(1) and 28 U.S.C. § 1402(b)**

10. Defendant is domiciled in Iberia Parish, Louisiana at 806 Jefferson Terrace, New Iberia.

11. Complainant is domiciled in Iberia Parish.

12. The malpractice at issue in this cause occurred in St. Martin Parish.

13. All Parishes are in this Honorable Court's venue.

14. Venue is proper in this Honorable Court pursuant to 28 U.S.C. §1346(b)(1) and 28 U.S.C. §1402(b).

**Facts**

15. Prior to April 2015, when she was 29 years old, Sheena Robertson, enjoyed good health.

16.  On April 30, 2015, she went to Our Lady of Lourdes Regional Medical Center due to "right lower back pain radiating down her right leg."

17. Eric Romig, M.D. evaluated claimant, diagnosed her with "sciatica" and discharged to home with instructions to take prescription medications.

18. On May 3, 2015, Sheena Robertson returned to Our Lady of Lourdes Regional Medical Center's emergency department due to "lower back pain radiating down right leg."

19. Joshua Gaspard, M.D diagnosed that she was suffering from "back pain and sciatica," and discharged her with instructions to take prescription medications.

20. On May 7, 2015, Sheena Robertson went to Iberia Comprehensive where she was treated by Danielle McLurkin, M.D. for complaints of "right-sided low back pain that radiated down her right buttock and the side of her leg into the bottom of her right foot."

21. The facility documented the pain as "sharp and/or burning" unrelieved by prescription medication.

22. No x-rays were taken nor was any other diagnostic testing done.

23. Dr. McLurkin diagnosed claimant as suffering from "lumbar radiculopathy" and discharged her home with prescription medication.

24. On May 23, 2015, at approximately 1:00PM, Sheena went to Dauterive Hospital due to "back pain with muscle spasms with pain getting worse" and "numbness to her low back and right leg."

25. She reported that prior to this visit, she had been to multiple emergency rooms with no relief.

26. She reported that her pain level was severe, a 10 out of the maximum level 10, and that there was no antecedent trauma.

27. She was seen by Michael Cotugno, M.D. who ordered no diagnostic studies.

28.  He diagnosed complainant as suffering from low back pain with acute right sciatica.

29. He ordered an injection of pain medicine and wrote prescriptions which included Naprosyn and Prednisone.

30. They referred Sheena to the Iberia Comprehensive Community Health Clinic for follow-up in seven days.

31. On May 25, 2015, Sheena went to Dauterive Hospital with complaints of "spasms in both legs with numbness and pain."

32. She reported that she had "difficulty walking and that the medicines were not helping," and that she had been seen four times previously, the last time on Saturday two days prior.

33. She was seen by Leland C. Lenahan, III, M.D who ordered no x-ray studies, Sheena was again diagnosed as suffering from "back pain".

34. And again, they referred her to Iberia Comprehensive Community Health Center.

35. The next day, May 26, 2015, Sheena went to Iberia Comprehensive Community Health Center for follow-up from her emergency room visits three days prior for her "persistent low back pain which radiated to her buttocks and thighs".

36. She informed Danielle McLurkin, M.D. that the pain was a 10 out of a possible 10 and was worsening and that the pain, which was radiating to both buttocks and to the back of her thighs, made walking difficult.

37. Sheena was terribly concerned with the numbness in her buttocks and genital areas.

38. She reported the urge to urinate but could not feel herself urinating.

39. She could only tell that she was urinating because of the sound.

40. Dr McLurkin's exam revealed decreased sensation in both legs, and Sheena's buttocks, anal and genital regions.

41. Dr. McLurkin detected a decreased response to tactile stimulation in sides of Sheena's upper thighs in the buttocks and perianal region.

42.  No rectal exam was done or recorded.

43. She was diagnosed as suffering from "lumbar radiculopathy."

44. A follow-up visit was scheduled for one month later.

45. An EMG was ordered and a MRI was planned pending insurance approval.

46. On May 27, 2015, at approximately 2:30AM, Sheena went by ambulance to Dauterive Hospital for "muscle spasms in both legs, with numbness in her left perineal and groin area".

47. She also reported constipation for which she had taken a laxative with resulting diarrhea.

48. She reported she "could not feel her diarrhea" as it occurred.

49. She reported "urinary retention" but "could not feel" that area of her body nor could she feel the act of urinating.

50. Sheena was seen by William Macklin, M.D.

51. The ER noted that Sheena was incontinent of stool and unable to urinate. She was catheterized and 1200mL of urine were removed.

52. No skeletal x-rays were taken. The ER noted that Sheena was incontinent of stool while on a stretcher.

53. Sheena was diagnosed with constipation/urinary tract infection and discharged home. She was reportedly instructed to follow up with Iberia Comprehensive Community Health Clinic in three days.

54. But on the same day, May 27, at approximately 6:00PM, due to continued severe back pain, numbness and inability to urinate, Sheena went by ambulance to Our Lady of Lourdes Regional Medical Center.

55. It documented her chief complaint as "urinary retention, low back pain, inability to defecate and numbness of her groin, as well as bladder fullness and urinary urgency."

56. She reported having seen multiple healthcare providers in the last week.

57. She was catheterized and a large amount of urine, 2000 ml was removed.

58. A neurological exam was reported as "no focal neurological deficits observed with normal sensory and motor observed".

59. Urgent steroid therapy was begun.

60. Ultimately, Sheena was diagnosed with "right sided L5-S1 disc herniation with a large fragment inferiorly which extended into the right which caused cauda equine syndrome with a decrease in bowel and bladder functioning."

61. And emergency surgery was performed by Dr. William Brennan, a lumbar hemi laminectomy and discectomy on the right side at L5-S1.

62. Due to the failure to timely diagnose and treat the right-sided L5-S1 disc herniation that caused *cauda equina* syndrome Sheena has suffered severe and permanent injury, loss of love, affection, consortium and loss of support.

63. She has suffered extreme grief, distress, humiliation, fear, embarrassment, physical pain and suffering, mental anguish, and medical expenses for which she is entitled to damages in amounts to be determined.

64. Complainant shows that a result of defendant's aforementioned negligence, fault and substandard care Sheena suffered serious and permanent physical injury, disability, loss of a chance for a better outcome, physical pain and suffering, sexual impairment and dysfunction, loss of an/or impaired mobility, impaired ability to defecate and urinate normally, loss of her ability to care for herself, mental anguish and distress, medical and related expenses, impairment to earning capacity, and loss of enjoyment of life, all past, present and future, for which she is entitled to be compensated by defendants herein in an amount which is just and reasonable.

**Defendant's Fault – Failures to Meet the Standard of Care**

65. Defendant's actions and inactions constitute and include fault, negligence, gross fault, gross negligence, want of care, failure to meet the standard of care, gross failure to meet the standard of care.

7

66. Specifically, as to plaintiff's presentation to Iberia Comprehensive and Danielle McLurkin, M.D. May 7, 2015, for complaints of "right-sided low back pain that radiated down her right buttock and the side of her leg into the bottom of her right foot," for which they documented the pain as "sharp and/or burning" unrelieved by prescription medication. The standard of care required defendant to:

    a. Take a complete history which focused on low back pain which radiated down her right lower extremities

    b. Obtain records from other treating facilities that had addressed plaintiff's same or similar complaints

    c. Take x-rays or other radiologic studies

    d. Order and cause to be taken diagnostic testing

    e. Make a differential diagnosis for "acute back pain with radiation"

    f. To not discharge the patient home with prescription medication.

    g. Refer her for specialist care.

    h. Maintain and schedule timely and appropriate follow up

67. Defendant's actions and inactions May 7, 2015, constitute and include fault, negligence, gross fault, gross negligence, want of care, failure to meet the standard of care, gross failure to meet the standard of care.

68. As to plaintiff's visit May 26, 2015 at Iberia Comprehensive for follow-up from her emergency room visits three days prior (at Dauterive Hospital) with complaints of "persistent low back pain which radiated to her buttocks and thighs," in which Sheena informed Danielle McLurkin, M.D. that the pain was a 10 out of a possible 10, worsening and radiating to both buttocks and to the back of her thighs which made walking difficult, and in which Sheena was terribly concerned with the numbness in her buttocks and genital areas and reported the urge to urinate but could not feel herself urinating and that

she could only tell that she was urinating because of the sound, in which Dr McLurkin's exam revealed decreased sensation in both legs, both buttocks, the anal and the genital regions indicated in part by a detected decreased response to tactile stimulation in sides of Sheena's upper thighs, the buttocks and perianal region., the standard of care:

   a.  required a complete history and physical exam focused on factors to identify an etiology for severe radiating back pain, urinary dysfunction, saddle aesthesia and sexual dysfunction

   b.  required the defendants to emergently obtain records and\or medical information from other prior healthcare providers or facilities who had treated Sheena for the same or similar complaints

   c.  required a sexual history and evaluation

   d.  required a rectal examination

   e.  required a complete and thorough neurological exam including assessment of strength, sensation, reflexes and muscle tone

   f.  required bladder ultrasound and urinary cauterization to explore any residual and/or impairment

   g.  required a differential diagnosis to "lumbar radiculopathy"

   h.  required a differential diagnosis and workup for acute urinary retention

   i.  required admission or transfer to rule out cauda equina syndrome

   j.  required more than a mere follow-up visit for one month later

   k.  required an emergent EMG regardless of insurance approval and/or referral for same

   l.  required emergent MRI regardless of insurance approval or referral for same

   m.  required emergent transfer and hospitalization for admission, specialist consultation and/or surgery
   n.  required emergent specialist consultation

69. Defendant's actions and inactions May 26, 2015, constitute and include fault, negligence, gross fault, gross negligence, want of care, failure to meet the standard of care, gross failure to meet the standard of care.

70. The day after that the visit of May 26, 2015 in which defendants gave a one-month follow-up Sheena, on May 27, was diagnosed with "right sided L5-S1 disc herniation with a large fragment inferiorly which extended into the right which caused cauda equine syndrome with a decrease in bowel and bladder functioning," for which Dr. William Brennan performed emergency surgery, a lumbar hemi laminectomy and discectomy on the right side at L5-S1.

71. Defendant's failure to timely diagnose and treat the right-sided L5-S1 disc herniation caused cauda equina syndrome that resulted in severe and permanent injury, for which damages are due.

72. Additionally, defendant failed to obtain Sheena Robertson's informed consent with respect to defendant's capabilities and limitations, including, but not limited to, safe and effective available treatment at Iberia Comprehensive  and/or at the direction of its physicians and/or health providers, and its or their capacity to determine the cause of her complaints given her condition at the time of the care rendered, or with respect to her individual, particular risks involved as well as the possibility that Sheena Robertson suffered from an emergency condition which required emergent diagnosis and treatment and alternatives for treatment, actual or expected benefits of such treatments, and thus Iberia Comprehensive's treatment was without Sheena Robertson's informed consent.

73. Also, Defendant breached the standard of care in failing to perform with the skill applicable to the care and management of Sheena Robertson, and/or failed to use

reasonable care and diligence in the exercise of that knowledge and skill that caused Sheena's injuries, complications and damages that would not otherwise have been incurred.

74. Sheena Robertson's injuries, complications and damages could have been prevented had defendant monitored, and promptly and appropriately performed indicated diagnostic tests or referred her for same or acted to otherwise ensure the performance of a surgery, urgent diagnostics, treatment, and/or care for Sheena Robertson.

75. Defendant's acts and omissions occurred while Sheena Robertson was unconscious and/or solely and wholly under the exclusive care, custody, and control of defendant and/or its agents, employees and servants acting in the course and scope of their agency and employment with defendant; and further that the aforementioned injuries complained to do not normally occur in the absence of negligence, fault or want of due care.

76. Complainant thus pleads the doctrine of *res ipsa loquitur*.

77. Defendant is liable to Complainant in *respondent superior* for its physicians, nurses and healthcare providers employed to render care to Sheena Robertson.

**Louisiana Administrative Proceeding - Administrative Action Defendants**

78. Not sued here but involved as defendants in an administrative action with the Louisiana Commissioner of Administration/Medical Review Panel, predicate to a state court action, MRP No:  2015-010187, are:

    a.  DauteriveHospital,600 N Lewis Street, New Iberia, LA70563

    b.  Danielle McLurkin, M.D., 317Dernier St, Saint Martinville, LA70582

    c.  William Macklin, M.D., 200 Corporate Blvd., Lafayette, Louisiana

    d.  Michael Cotugno, M.D., 600 N. Lewis Street, New Iberia, Louisiana

    e.  Leland C. Lenahan, III, M.D., 1020 W Fertitta Blvd., Leesville, Louisiana

    f.   William A. Brennan, 105 Patriot Avenue, Suite101, Lafayette, Louisiana

    g.  Dr. William T. Elliot, 1105 Robert E. Lee Blvd., New Orleans, Louisiana

    h.  Our Lady of Lourdes Regional Medical Center, 4801Ambassador Caffery Pkwy, Lafayette, LA 70508.
(Administrative Action Defendants)

79. The fact allegations in Paragraph 15 to 64 are adopted here.

80. Administrative Action Defendants failed to meet one or more of the following standards of care by having failed:

    a.  to monitor, prevent, diagnose and/or control progressive signs and symptoms of serious neurological impairment and/or damage;

    b.  to properly or promptly perform diagnosis procedures on Sheena Robertson;

    c.  to properly and promptly perform treatment, diagnosis and/or therapy to prevent Sheena Robertson's continued neurologically impairment, disability or damage;

    d.  to properly obtain, record and/or fully consider an adequate medical history;

    e.  to properly perform, record and/or fully consider an adequate medical and/or neurological examination;

    f.  to obtain, review and fully consider relevant medical records or history of Sheena Robertson;

    g.  to properly obtain, record, evaluate and promptly or properly diagnose the cause of Sheena Robertson's complaints as well as signs and symptoms;

    h.  to properly and promptly assess and treat Sheena Robertson's condition considering her complaints, history, laboratory findings, testing, and medications and/or treatment prescribed; to timely rule out life-threatening causes for Sheena Robertson's complaint and condition and in failing to properly or adequately treat same;

    i.  to adequately or appropriately monitor Sheena Robertson;

    j.  to require or perform the necessary, proper and timely examinations and diagnostic testing of Sheena Robertson called for under the circumstances;

    k.  to obtain prompt and proper laboratory, CT, MRI studies or other diagnostic testing;

    l.  to require timely consultation with other practitioners or specialties;

m.  to exercise reasonable care in examining, evaluating, treating and monitoring Sheena Robertson while hospitalized;

n.  to promptly and adequately heed, report, chart or evaluate Sheena Robertson's signs, symptoms and complaints;

o.  to exercise the degree of care and skill required under the circumstances;

p.  to implement and/or follow guidelines, policies or protocol to ensure proper care for patients like Sheena Robertson;

q.  to review or properly evaluate Sheena Robertson's past relevant history, diagnostic testing and/or records;

r.  to keep personally abreast of current medical and scientific diagnostic tests, and studies and medical literature concerning diagnosis and treatment for the medical conditions, symptoms and problems manifested by Complainant while a patient;

s.  to take appropriate action in the light of Sheena Robertson's condition and reports from consultants;

t.  to treat, by recommended emergency procedures, the existence of Sheena Robertson's severe neurological impairment and/or condition;

u.  Any other errors that occurred that are not specifically listed above but are evident to the medical review panel physicians;

v.  In failing to properly and promptly make an accurate record of the events, care and treatment related to Sheena Robertson;

w.  In failing to properly supervise those to whom the care, management, evaluation and treatments were delegated;

x.  Any and all other acts of negligence revealed during discovery or at any trial regarding these matters.

81. Administrative Action Defendants' actions and inactions caused and contributed to

Sheena's damages.

**Prayer for Relief**

WHEREFORE, Sheena Robertson prays that this Honorable Court enter judgment against

Comprehensive Community Health Center, Inc. for damages reasonable in the premises, costs,

13

reasonable fees; and all relief as the Honorable Court may deem proper, equitable and/or appropriate, etcetera.

Respectfully submitted,

THE GLENN ARMENTOR LAW CORPORATION



_____
Tracy P. Curtis (21546) TA
Leslie A. Cordell (14167)
300 Stewart Street
Lafayette, LA 70501
(337) 233-1471 x341
Fax: (337) 233-5655
tcurtis@glennarmentor.com
*Attorneys for Complainant*

**To be served by certified mail:**

Jeff Sessions
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Alexander C. Van Hook
Acting United States Attorney
Western District of Louisiana
U.S. Attorney's Office
300 Fannin Street, Suite 3201
Shreveport, LA  71101