UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **SHEENA ROBERTSON** | **CASE NO. 6:17-CV-01663** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **IBERIA COMPREHENSIVE COMMUNITY HEALTH CENTER INC** | **MAGISTRATE JUDGE DAVID J. AYO** |

## MEMORANDUM RULING AND ORDER

Presently before the Court is the Daubert Motion to Exclude or Limit Defendant's Expert Witnesses, Dr. Naveen Kella and Dr. Peter A. Coldwell [ECF No. 36] filed by Plaintiff, Sheena Robertson. Defendant opposes the motion.

### I.
#### FACTUAL BACKGROUND

This is a medical malpractice action filed by Sheena Robertson ("Plaintiff") against Dr. Danielle McLurkin ("McLurkin") and her employer, Iberia Comprehensive Community Health Clinic. Since the clinic is a federally-supported health facility of the Health Resources and Services Administration, the United States of America is the proper defendant in this matter. Roberson alleges that Dr. McLurkin, who was a family medicine specialist, failed to promptly diagnose, to obtain urgent MRI, and to immediately refer plaintiff for an emergency surgical consult for her Cauda Equina Syndrome ("CES"). Dr. McLurkin was one of several health care providers who saw plaintiff from April 30, 2015, through May 27, 2015. The other health care providers are defendants in Plaintiff's state action. As to the health care providers who are defendants in the state court action, the Louisiana Medical Review Panel ("MRP") found that Dr. William Macklin, who saw Plaintiff the day after Dr. McLurkin saw her, failed to meet the applicable standard of care,

1

finding specifically that Plaintiff presented with the symptoms of CES which Dr. Macklin failed to diagnose or treat.

## II.
## LAW AND ANALYSIS

### A. Federal Tort Claims Act.

Under the Federal Tort claims Act[1] ("FTCA"), the United States is immune from suit except in the manner and to the degree that sovereign immunity has been waived.[2] The FTCA waives sovereign immunity for personal injury caused by the negligence or wrongful act or omission of any employee of the government while acting within the scope of his or her duties, under circumstances where the United States, if a private person, would be liable in accordance with the substantive law of the place where the act or omission occurred.[3] State substantive law controls liability for medical malpractice under the FTCA.[4]

### B. Legal Standards for Expert Testimony.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. A witness may be qualified as an expert through knowledge, skill, experience, training, or education.[5] A qualified expert may testify as to his or her opinion if that opinion is based upon sufficient facts and data, is the result of reliable application of reliable principles and methods to the facts of the case, and if the expert's "scientific, technical, or other specialized knowledge" will help the finder of fact understand the evidence or determine a fact at issue.[6] Rule 702 imposes an obligation on a trial court to ensure that expert testimony—whether scientific or not—is not only

---

[1] 28 U.S.C. 1346(B), 2671, *et seq*
[2] *In re: Fema Trailer Formaldehyde Products Liability Litig*. 668 F. 3d 281, 287 (5th Cir. 2012).
[3] 28 U.S.C. 1346(b)(1), 2674; *Hanna v. the United States*, 523 F.3d 597, 601 (5th Cir. 2008).
[4] *Id*.; *Coleman v. U.S.*, 12 F 3d 824, 829 (5th Cir. 2019).
[5] Fed. R. Evid. 702.
[6] *Id.*

relevant, but reliable.[7] An expert's opinion may be based on facts or data in the case of which the expert has been made aware or which he or she has personally observed.[8] An expert may not render legal conclusions or provide opinions on legal issues.[9]

Expert testimony is relevant if it is shown "that the expert's reasoning or methodology can be properly applied to the facts in issue."[10] To be reliable, expert testimony must be "grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief."[11] The proponent of expert testimony has the burden to show by a preponderance of the evidence it is reliable, not that it is correct.[12] "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*."[13]

The questions of relevance and reliability are the Court's overarching concern.[14] The analysis should be performed with an eye toward whether the expert opinion will assist the trier of fact, which requires that a proffered expert be able to "bring to the jury more than the lawyers can offer in argument."[15] Whether an expert's opinion would be helpful to the trier of fact is a low bar and turns largely on whether the testimony is relevant; questions related to the bases and sources of an expert's opinion go to the weight of the testimony rather than its admissibility.[16] The Court's role is not to displace the adversary system, but to ensure that the disputed evidence is "sufficiently

---

[7] *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).
[8] Fed. R. Evid. 703.
[9] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citing *Goodman v. Harris Cnty*., 571 F.3d 388, 399 (5th Cir. 2009)).
[10] *Johnson v. Arkema, Inc*., 685 F.3d 452, 459 (5th Cir. 2012) (citing *Curtis v. M & S Petroleum, Inc*. 174 F.3d 661, 668 (5th Cir.1999)).
[11] *Id*.
[12] *Johnson*, 685 F.3d at 459 (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).
[13] *Id.*
[14] *Puga v. RCX Sols., Inc*., 922 F.3d 285, 293–94 (5th Cir. 2019).
[15] *Id.* (internal citations omitted).
[16] *Id.*

3

reliable and relevant to the issue so that it is appropriate for the jury's consideration."[17] Exclusion of expert testimony is the exception rather than the rule—"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[18]

### C. Dr. Naveen Kella.

Plaintiff seeks to exclude or limit the testimony of Dr. Naveen Kella because (1) Dr. Kella is a urologist and is allegedly not qualified to testify as to the standard of care of a family medical practitioner; (2) Dr. Kella's opinion is based on faulty assumptions; and (3) Dr. Kella is not a neurosurgeon who can opine as to the diagnosis and treatment of CES.

The record reflects that Dr. Naveen Kella holds a medical license in the State of Texas and earned his undergraduate degree from Stanford University and his medical degree from the University of Texas, Southwestern Medical School.[19] He is a board-certified urologist practicing clinical urology since 2004.[20] Dr. Kella cares for patients with general urology conditions and completed a yearlong fellowship in urologic oncology to offer specialized care for men and women needing urological cancer care.[21] As a urologist, he has encountered dozens of patients who have suffered neurogenic bladder injury similar to the injury alleged by Plaintiff.[22]

While Dr. Kella is not a specialist in the broader practice area of family medicine, he is a specialist in urology. The condition which Plaintiff suffers from, CES, presents symptoms impacting urology and neurology as well as other general health conditions such as back pain.[23] It is therefore possible that specialists in various areas of medicine would be competent to offer

---

[17] *Id.* (citations omitted).
[18] *Id.* (citing *Daubert*, 509 U.S. at 596).
[19] ECF No. 36, Exhibit 4.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

4

opinions as to the condition. The Court finds that Dr. Kella is qualified to offer his opinion in this matter and finds that his opinion would assist the trier of fact in reaching a decision. Plaintiff can cross examine Dr. Kella with regard to any issues relating to his specialty as well as what assumptions he relied upon in reaching his opinions.

### D. Dr. Peter Coldwell.

Plaintiff challenges Dr. Coldwell, an expert in the area of family medicine, on the basis that Dr. Coldwell's opinions are contrary to the opinions reached by the MRP. However, the defendants in the present case were not parties to the state court action and were therefore not involved with the MRP proceedings. The MRP did not address the standard of care of Dr. McLurkin but did address the standard of care of the medical providers who saw the Plaintiff in the days prior to Dr. McLurkin as well as the provider who saw the Plaintiff the day after Mr. McLurkin. The MRP concluded that the providers who saw Plaintiff prior to Dr. McLurkin met the standard of care while the provider who saw Plaintiff the day after her consultation with Dr. McLurkin failed to meet the standard of care.[24] Dr. Coldwell opined that the providers who saw Plaintiff prior to Dr. McLurkin failed to meet the standard of care.[25] Plaintiff argues that this distinction disqualifies Dr. Coldwell. The Court disagrees. The MRP did not examine the conduct of Dr. McLurkin and it is the actions of Dr. McLurkin that are at issue in the present case. The Court is not bound by the opinions of the MRP, which did not examine the conduct of the defendants in the present case. Further, Dr. Coldwell addresses the findings of the MRP in his report. Plaintiff can cross examine Dr. Coldwell regarding any differences in his opinion which may be contrary to the opinions offered by the MRP.

---

[24] ECF No. 36, Exhibit 8.
[25] ECF No. 36, Exhibit 7.

5

For the foregoing reasons, the Court finds that Plaintiff has failed to state sufficient cause to prohibit the testimony of either Dr. Kella or Dr. Coldwell. As this is a bench trial, the Court is capable of determining the appropriate weight to be given to the various expert witnesses presented at trial.

THUS DONE in Chambers on this 26th day of September, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE